## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISIONS

| | | |
|---|---|---|
| **RAMONA L.,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CASE NO. 3:18-CV-2041-G-BK** |
| | § | |
| **ANDREW M. SAUL,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **DEFENDANT.** | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, the Court has considered the parties'
cross-motions for summary judgment.  Doc. 14; Doc. 15.  For the reasons that follow,
Defendant's *Motion for Summary Judgment* should be **GRANTED**, Plaintiff's *Motion for
Summary Judgment* should be **DENIED**, and the Commissioner's decision should be
**AFFIRMED**.

## I.    BACKGROUND

### A.  Procedural History

Plaintiff seeks judicial review of a final decision of the Commissioner denying her claim
for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act").
Plaintiff applied for benefits, alleging that she had been disabled since her amended onset date
("AOD") of December 12, 2015, due to lupus, diabetes mellitus, neuropathy, acute arthritis,
depressive disorder, acute bronchitis, neck pain, dermatomycosis unspecified, edema of lower
extremity, and otitis externa.  Doc. 11-1 at 47-48; Doc. 11-1 at 229.  Because Plaintiff's date last

insured ("DLI") was December 31, 2015, Doc. 11-1 at 42-43, the period under consideration for purposes of her DIB application is from December 12 through December 31, 2015. *See Shields v. Comm'r, Soc. Sec. Admin., No. 6:08-CV-00484-MHS-JKG, 2008 WL 8141300, at *9 (E.D. Tex. Dec. 16, 2008)* (holding that a claimant must demonstrate that she was disabled between her alleged onset date and her DLI) (citing *Brown v. Astrue*, 344 Fed. Appx. 16, 20 (5th Cir. 2009) (per curiam)). Plaintiff's claim was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. §405(g). Doc. 11-1 at 6; Doc. 11-1 at 10-14; Doc. 11-1 at 23-33; Doc. 11-1 at 88-93; Doc. 11-1 at 96-98; Doc. 11-1 at 105-08.

**B.  Factual Background**

Plaintiff was 47 years old when the administrative law judge ("ALJ") rendered his decision. Doc. 11-1 at 33, 49. She had an associate degree, certification as a manicurist, and past relevant work experience as a nail technician, laundry worker, and explosives operator. Doc. 11-1 at 49-50, 54-56. In terms of Plaintiff's pertinent medical history, the evidence indicates that she had been treated intermittently just prior to and immediately after her DLI for diabetes mellitus, benign hypertension, nausea, recurrent urinary tract infections, dehydration, dizziness, migraine headaches, edema in all extremities, joint pain, and recently diagnosed fibromyalgia and lupus. Doc. 11-3 at 281-83; Doc. 11-3 at 291; Doc. 11-3 at 353, 358; Doc. 11-3 at 371, 373, 379; Doc. 11-3 at 473, 476.

**C.  The ALJ's Findings**

The ALJ held that Plaintiff had the severe impairments of diabetes mellitus, systemic lupus erythematosus, and leukopenia, but that the impairments did not meet or equal the severity of any of the listed impairments. Doc. 11-1 at 28-29. Further, the ALJ found that, through Plaintiff's DLI, she retained the residual functional capacity ("RFC") to perform the full range of

light work.  Doc. 11-1 at 29.  Accordingly, the ALJ determined that Plaintiff was capable of performing her past relevant work and was thus not disabled between her AOD of December 12, 2015 through her DLI of December 31, 2015.  Doc. 11-1 at 32-33.

## II.    APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

## III.    PARTIES' ARGUMENTS AND ANALYSIS

Plaintiff argues that the ALJ failed to consider all of her severe impairments when assessing her RFC because the ALJ's finding that Plaintiff's fibromyalgia was not a severe impairment was improperly based on "layman's intuitions." Doc. 14 at 9-11, 17. In a related argument, Plaintiff contends that the ALJ applied the incorrect standard in assessing severity

4

because he did not cite to *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) or specifically address *Stone*'s "slight abnormality" standard.  Doc. 14 at 11; *see Stone*, 752 F.2d at 1101 (holding that "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.") (alterations omitted).

As an initial matter, Defendant argues that to qualify for DIB, a claimant must establish that "she became disabled prior to the expiration of her insured status."  Doc. 15 at 5 (citing *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)).  Defendant reasons that (1) Plaintiff's medical records prior to December 12, 2015 and after December 31, 2015 are thus immaterial because they do not relate to the period for which benefits were denied; and (2) the record evidence in that time frame does not indicate that Plaintiff was functionally impaired to the extent that she could not engage in substantial gainful activity.  Doc. 15 at 5-6, 8.  Additionally, Defendant argues that the ALJ correctly applied the *Stone* standard and, even if he did not, he proceeded past step two of the five-step sequential analysis and considered Plaintiff's fibromyalgia and its effects, thus rendering any *Stone* error harmless.  Doc. 15 at 7.

As noted by Defendant, for purposes of Plaintiff's DIB application, the Court will generally only consider medical records in the December 2015 timeframe.  *See Shields*, 2008 WL 8141300, at *9.  In that span of time, there is very little mention of Plaintiff's fibromyalgia in the record.  On December 3, 2015, Plaintiff had a follow-up appointment with her rheumatologist Dr. Rosy Rajbhandary, whose assessment included fibromyalgia, which had been diagnosed two months earlier.  Doc. 11-3 at 483; Doc. 11-3 at 452.  During that appointment, Dr. Rajbhandary noted that Plaintiff had no joint pain or swelling, muscle weakness, fatigue, malaise, headache, memory impairment, or numbness in her extremities.  Doc. 11-3 at 453.

Indeed, Plaintiff appeared to be well nourished and in no apparent distress, and her physical examination was noted as "normal" in all aspects. Doc. 11-3 at 453-54. The doctor encouraged Plaintiff to exercise and continued her on the same fibromyalgia medications that her primary care physician had prescribed, although some of the dosages were adjusted. Doc. 11-3 at 455.

In January 2016, Plaintiff returned to see Dr. Rajbhandary for a review of her lab results and reported that she had been doing "quite well" in terms of her lupus and fibromyalgia. Doc. 11-3 at 468. Plaintiff noted decreased fatigue, insomnia, and back pain, and her overall body pain was reduced by more than 60 percent. Doc. 11-3 at 468. Her physical examination was normal in all respects. Doc. 11-3 at 470. The following month, Plaintiff reported that she felt much better, her joint pain was no longer bothering her, and her energy level and sleep had improved. Doc. 11-3 at 462. Viewed in light of the pertinent records, the ALJ's decision that Plaintiff's fibromyalgia was non-severe is supported by substantial evidence. *Greenspan*, 38 F.3d at 236.

Moreover, in reaching that conclusion, the ALJ applied the correct *Stone* standard, which allows for no interference with a claimant's ability to work. *See* Doc. 11-1 at 27 (ALJ noting that "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality (or a combination of slight abnormalities) that *would not be expected to interfere* with the individual's ability to work irrespective of age, education, or work experience." (emphasis added)); *see also Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (holding that, under *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it *would not be expected to interfere* with the individual's ability to work, irrespective of age, education or work experience." (emphasis added) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)); *but cf.*

*Hitchcock v. Berryhill*, No. 3:17-CV-3164-BH, 2019 WL 1128866, at *8 (N.D. Tex. March 12, 2019) (Ramirez, J.) (finding that the ALJ erred in stating that "an impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have *no more than a minimal effect* on an individual's ability to work." (emphasis added)).  Regardless, even if the ALJ did err in applying *Stone*, the error would be harmless because the ALJ considered Plaintiff's fibromyalgia and its effects at the fourth step of the sequential analysis.  *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (holding that a failure to make a severity finding at step two is not reversible error when the ALJ continues with the sequential evaluation process as to the alleged impairment).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's *Motion for Summary Judgment*, Doc. 15, should be **GRANTED**, Plaintiff's *Motion for Summary Judgment*, Doc. 14, should be **DENIED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on July 22, 2019.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); F<small>ED.</small> R. C<small>IV.</small> P. 72(b).  An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify where in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).